UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARY BACIA KABOGOZA, on
behalf of herself and the
Estate of Davies Khallit
Kabogoza,

                    Plaintiff,

         v.

BLUE WATER BOATING, INC., et
al.,

                    Defendants.

No.  2:18-cv-02722-JAM-KJN

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AND DECLARING
PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT MOOT**

On October 9, 2018, Mary Kabogoza ("Plaintiff") filed a
complaint against Blue Water Boating, Inc., Skip Abed, and ten
"Roe" defendants ("Defendants").  Compl., ECF No. 1.  Plaintiff
brought a wrongful death claim on her own behalf, and a survival
action for negligence on behalf of her deceased husband, Davies
Kabogoza.  Compl. ¶¶ 8-17.  She amended the complaint a month
later to replace the negligence claim with a claim for gross
negligence.  See First Am. Compl. ("FAC") ¶ 22-29, ECF No. 4.
Plaintiff properly invokes the Court's diversity jurisdiction and
admiralty jurisdiction.  FAC ¶ 1 (citing 28 U.S.C. §§ 1332,

1333).[1]

Defendants filed a motion to dismiss both of Plaintiff's claims. Mot. to Dismiss ("Mot."), ECF No. 6. Plaintiff opposed Defendants' motion, and filed a Motion for Partial Summary Judgment. Opp'n to Mot. to Dismiss and Cross-Mot. for Partial Summ. J. ("Cross-Mot."), ECF No. 8. Defendants opposed Plaintiff's motion. Opp'n to Cross-Mot. and Reply ("Opp'n"), ECF No. 9. Plaintiff, however, never filed a reply to Defendants' opposition.

For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion to Dismiss. The Court denies Plaintiff's Motion for Summary Judgment.

## I.   FACTUAL ALLEGATIONS

In April 2017, Davies Kabogoza and his friend, Laura Tandy, rented stand-up paddleboards from Defendant Blue Water Boating. FAC ¶ 6. Kabogoza had rented paddleboards from this rental company before. FAC ¶ 7. He was familiar with the staff, but had never told them that he could not swim. FAC ¶ 14.

Kabogoza and Tandy signed a rental agreement before taking out the paddleboards. FAC ¶ 18. The one-page agreement included several general and SUP-specific safety rules, along with a release of liability. FAC, Ex. A. Upon signing the agreement, the rental company—per Kabogoza's request—gave him and Tandy intermediate-level paddleboards and belt-pack flotation devices.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 19, 2019.

FAC ¶¶ 7, 10, 15.  Regular life vests were also available, but Defendants allow their customers to choose between the two options.  FAC ¶ 14.  Belt-pack flotation devices are "very popular" among paddle boarders, but customers often wear them incorrectly, with the flotation portion of the device facing backwards.  Id.  Plaintiff alleges that Kabogoza was wearing his incorrectly at the time of the accident.  FAC. ¶ 13.

Defendants also gave its customers the option of using a paddleboard leash.  FAC ¶ 16.  Defendant Skip Abed, the owner of Blue Water Boating, told an investigator that 9 out of 10 times, customers do not want a leash.  Id.  Neither Kabogoza nor Tandy used a leash while paddleboarding.  FAC ¶ 19.

Shortly after Kabogoza and Tandy began using their paddleboards in the Santa Barbara Harbor, the wind increased, and the water became choppy.  FAC ¶ 9.  Tandy was in front of Kabogoza when she heard a splash behind her.  Id.  When she turned around, she saw that Kabogoza had fallen off his board, and was struggling to keep his head above water.  Id.  Tandy was unable to reach Kabogoza and prevent him from drowning.  Id.  A dive team later found his body at the bottom of the ocean in about 30 feet of water.  Id.  When the divers found him, Kabogoza's flotation device was attached to his waist, but in the backwards position.  FAC ¶ 12.  An inspection revealed that the device was in "good working order."  Id.

///

///

///

///

II.  OPINION

A.  Defendants' Motion to Dismiss

1.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  A court will dismiss a suit if the plaintiff fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  It is not, however, "bound to accept as true a legal conclusion couched as a factual allegation."  Id. A court may consider documents whose contents are alleged in or attached to the complaint if no party questions the documents' authenticity.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

2.  Analysis

a.  Choice of Law

Plaintiff's claims arise out of this Court's admiralty jurisdiction as well as its diversity jurisdiction.  A claim arising in admiralty is governed by federal admiralty law. Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996). Ordinarily, a court may not supplement maritime law with state law when the state's law "will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law." Id. at 207 (quoting Western Fuel Co. v. Garcia, 257 U.S. 233, 242 (1921)).  However, admiralty law does not provide a cause of

4

action for wrongful death or survival suits independent of the remedies provided by state law. Id. at 206. Thus, in admiralty, "state statutes provide the standard of liability as well as the remedial regime" for wrongful death and survival actions. Id. To the extent that Plaintiff's claims arise under the Court's admiralty jurisdiction, California law applies.

When a claim arises out of the court's diversity jurisdiction, the court applies the substantive law of the forum state. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). But if the dispute is covered by a valid choice-of-law clause, the laws of the contractually-designated state applies. PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007). Here, the law of the forum and the law designated by the rental agreement's choice-of-law clause are the same. See FAC, Ex. A. California law applies to the claims arising out of this Court's diversity jurisdiction.

b. Gross Negligence

Plaintiff has not stated a claim for gross negligence. Gross negligence is defined as "the want of even scant care or an extreme departure from the ordinary standard of conduct." Id. (quoting Kearl v. Board of Med. Quality Assurance, Cal. App. 3d 1040, 1052-53 (1986). The California Supreme Court has emphasized "the importance of maintaining a distinction between ordinary and gross negligence," and disposing of cases on that bases "in appropriate circumstances." City of Santa Barbara, 41 Cal.4th at 766.

Defendants first argue that Plaintiff's claim should be dismissed because it is barred by the assumption-of-risk

5

doctrine. Mot. at 9-11. The Court disagrees. To the extent that the claim is arising out of the Court's admiralty jurisdiction, maritime tort law does not adopt California's approach to this doctrine. Barber v. Marina Sailing, Inc., 36 Cal. App. 4th 558, 568-69 (1995). Assumption of risk, be it express or implied, may not serve as a bar to claims that arise under admiralty law. Id. at 568 ("Numerous federal cases have held in a variety of contexts that assumption of [] risk is not permitted as an affirmative defense in admiralty law."). While true that California law governs the standard of liability and the remedial regime for survival actions, Defendants do not identify any cases to suggest that Yamaha likewise intended state law to modify the defenses available in admiralty. To the extent that Plaintiff's gross negligence claim arises under the Court's admiralty jurisdiction, assumption of risk does not bar the action.

Assumption of risk likewise does not preclude Plaintiff's gross negligence claim arising under the Court's diversity jurisdiction. Although California law recognizes assumption of risk as a bar to recovery under some circumstances, it does not allow a party to release itself from liability for gross negligence. City of Santa Barbara v. Super. Ct., 41 Cal. 4th 747, 779 (2007). To the extent that Plaintiff's gross negligence claim arises under the Court's diversity jurisdiction, assumption of risk, again, does not bar the action. For the same reason, the exculpatory clause in Defendants' rental agreement does not bar Plaintiff's survival action for gross negligence. So long as the allegations in the

complaint support a plausible claim for relief, Plaintiff's
claim must survive Defendant's motion to dismiss.

But even when accepted as true, Plaintiff's allegations do
not state a plausible gross negligence claim.  Plaintiff alleges
that Defendants' gross negligence is reflected in the following
omissions:

- Failing to ask Kabogoza about his swimming abilities before
  renting him a paddleboard;
- Failing to warn Kabogoza of the danger of using and/or
  misusing the paddleboard and belt-pack flotation device;
- Failing to ensure that Kabogoza was leashed to the
  paddleboard while using it; and
- Failing to ensure that Kabogoza knew how to use the
  paddleboard and belt-pack flotation device.

FAC ¶ 25.[2]

These omissions, when viewed in light of the circumstances
surrounding this incident, might give rise to a colorable
negligence claim had Kabogoza not released Defendants of
liability.  But they do not rise to the level of culpability
found in the cases Plaintiff cites where gross negligence claims
survived motions to dismiss.  See Cross-Mot. at 10-11.  In City
of Santa Barbara, the court found that the plaintiff's claim for
gross negligence properly fell outside the defendant's
exculpatory clause when a young girl with epilepsy drowned at

---

[2] Plaintiff also alleges that Defendants breached a duty to
Kabogoza by failing to safely manufacture the paddleboard and
flotation device, and by failing to timely issue recalls of the
defective products.  FAC ¶ 25.  But to date, Plaintiff has not
joined any manufacturers or distributors as defendants.

defendant's camp for developmentally-disabled children.  41 Cal. 4th at 751-52.  The girl's parents had told the city that their daughter was prone to seizures while in the water and required constant supervision.  Id. at 752.  Even so, a camp supervisor—knowing the girl had suffered from a seizure less than an hour earlier—diverted her attention while the child was swimming.  Id.  The girl had a seizure and drowned.  Id.  Mayall v. USA Water Polo, Inc., 909 F.3d 1055 (9th Cir. 2018) and Lewis v. Mammoth Mountain Ski Area, No. 1:07-cv-00497-OWW-GSA, 2009 WL 426595 (E.D. Cal. Feb. 20, 2009) involved similarly culpable omissions.

The defendants here differ from the defendants in City of Santa Barbara, Mayall, and Lewis in several important respects.  First, Defendants knew that Kabogoza had safely engaged in paddleboarding before.  FAC ¶ 9.  Unlike in City of Santa Barbara, where defendant knew the decedent had a history of having seizures in the water; Mayall, where defendant knew water-polo players were dangerously returning to play after suffering concussions; and Lewis, where the employee knew he was leading beginner snowmobilers, Defendants had no reason to know that Kabogoza was at an increased risk of harm.  In fact, Defendants knew that he had a history of safely participating in this activity. FAC ¶ 9.  Kabogoza rented paddleboards from Blue Water Boating on up to three previous occasions.  Id.

Furthermore, Defendants equipped all of their customers with safety information and safety equipment regardless of their skill level.  FAC ¶¶ 6, 16.  Defendants made sure that each renter signed a rental agreement that included clear safety

8

instructions about the products it rented.  FAC, Ex. A.
Defendants gave each of their customers flotation devices to
protect against the inherent and inevitable risk of falling into
the ocean.  FAC ¶ 6.  They also made paddleboard leashes
available to all their customers even though nine out of ten
renters opted not to use them.  FAC ¶ 16.

Plaintiff makes much of the fact that Defendants did not
ask about each customer's swimming abilities or require each
customer to have use a leash.  FAC ¶ 25; Cross-Mot. at 11.  Nor
did Defendants specifically work with its customers to ensure
they were correctly using the flotation devices.  FAC ¶ 25;
Cross-Mot. at 11.  Rental companies can, of course, always do
more to ensure that their customers have the safest possible
experience.  And when those companies' rentals involve the level
of risk that gives way to this sort of tragedy, they likely
should.  But the law does not task the Court with answering that
question today.  Here, the question is whether Defendants acted
with "a 'want of even scant care' or 'an extreme departure from
the ordinary standard of conduct.' "  Based on Plaintiff's
pleadings, the Court cannot find that they did.

The Court dismisses Plaintiff's gross negligence claim
without prejudice.

### c.  Wrongful Death

Plaintiff has not stated a wrongful death claim.  Nor did
she meaningfully oppose Defendants' motion to dismiss this
claim.  California law governs wrongful death claims regardless
of whether the claim arises under the court's diversity or
admiralty jurisdiction.  Yamaha Motor Corp., 516 U.S. at 206-07.

To support a claim of negligent wrongful death under California law, "a plaintiff must establish the standard elements of negligence: defendants owed a duty of care; defendants breached their duty; and defendants' breach caused plaintiff's injury." Hayes v. Cnty. of San Diego, 736 F.3d 1223, 1231 (9th Cir. 2013) (citing Wright v. City of Los Angeles, 219 Cal. App. 3d 318, 344 (1990)).

A wrongful death action—unlike claims brought under the state's survival statute—belong to the decedent's heirs, not to the decedent. Madison v. Super. Ct., 203 Cal. App. 3d 589, 596 (1988). All the same, "a plaintiff in a wrongful death action is subject to any defenses which could have been asserted against the decedent." Id. at 597. These defenses include a decedent's decision "to waive the defendant's negligence and assume all risks." Id.

Here, Kabogoza signed a rental agreement where he expressly assumed the risks of paddleboarding and released Defendants of liability. FAC, Ex. A. To the extent that the assumption-of-risk and exculpatory clauses purport to release Defendants from liability for ordinary negligence, they are valid. See FAC, Ex. A. See also City of Santa Barbara, 41 Cal.4th at 755-58; Knight v. Jewett, 3 Cal.4th 296, 319-21 (1992). And as already discussed, Plaintiff does not make a showing of gross negligence that would bring her wrongful death action outside the rental agreement's scope.

The rental agreement precludes Plaintiff from making out a claim of ordinary negligence. To the extent that her wrongful death claim is predicated on Defendants' ordinary negligence,

1   the Court dismisses it with prejudice.

2        B.   Plaintiff's Cross-Motion for Summary Judgment

3        The Court has dismissed the gross negligence claim covered

4   by Plaintiff's Motion for Partial Summary Judgment.  The

5   arguments raised in Plaintiff's motion are, therefore, moot.

6

7                     III.   ORDER

8        For the reasons set forth above, the Court GRANTS

9   Defendants' Motion to Dismiss.  Plaintiff's gross negligence

10  claim is DISMISSED WITHOUT PREJUDICE.  If Plaintiffs elect to

11  amend their complaint with respect to these claims, they shall

12  file a Second Amended Complaint within twenty (20) days of this

13  Order.  Defendants' responsive pleading is due twenty (20) days

14  thereafter.  Plaintiff's wrongful death claim is DISMISSED WITH

15  PREJUDICE to the extent that it is based on Defendants' ordinary

16  negligence.

17       The Court DENIES AS MOOT Plaintiff's Motion for Summary

18  Judgment on her gross negligence claim.

19       IT IS SO ORDERED.

20  Dated: April 5, 2019

21                                    _____
                                      JOHN A. MENDEZ,
22                                    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

                               11